EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Joel Ayala Hernández<br>Peticionario<br><br>v.<br><br>Junta de Directores Condominio y Consejo de Titulares del Condominio Bosque Sereno<br>Recurrido | Certiorari<br><br>2014 TSPR 36<br><br>190 DPR ____ |

Número del Caso: AC-2013-11

Fecha: 10 de marzo de 2014

Tribunal de Apelaciones: Región Judicial de San Juan

Abogada de la Parte Peticionaria:

      Lcda. Mónica Figueroa Ramos

Abogado de la Recurrida:

      Lcdo. Raúl del Manzano Román

Materia: Derecho Administrativo – Jurisdicción del DACO para atender querella sobre impugnación de cláusula de reglamento de un condominio sometido al régimen de Propiedad Horizontal y sobre actos realizados por la Junta de Directores de un condominio cuando estás se basan en un reglamento; suspensión de los servicios esenciales en caso de duda de un titular.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| Joel Ayala Hernández<br>Peticionario<br><br>v.<br><br>Junta de Directores Condominio y<br>Consejo de Titulares del<br>Condominio Bosque Sereno<br>Recurrido | Certiorari<br><br><br>AC-2013-0011 |

Opinión del Tribunal emitida por el Juez Asociado señor Rivera García.

En San Juan, Puerto Rico, a 10 de marzo de 2014.

El caso ante nuestra consideración nos permite justipreciar si el Departamento de Asuntos del Consumidor (DACO) tiene jurisdicción para atender una querella en la que se impugna una cláusula del reglamento de un condominio sometido al régimen de propiedad horizontal, cuando dicho reglamento está inscrito en el Registro de la Propiedad. Resuelta dicha interrogante en la afirmativa, tenemos la oportunidad de dilucidar si nuestro ordenamiento jurídico permite que la Junta de Directores de un condominio imponga como sanción la suspensión de servicios esenciales, tales como el agua y la

electricidad, a aquellos titulares que adeudan multas por violar las normas de administración y sana convivencia estipuladas en el reglamento del condominio. Esto último, lo resolvemos en la negativa.

I

Los hechos que originan el presente caso son relativamente sencillos y sobre estos no existe controversia.

El Sr. Joel Ayala Hernández (señor Ayala) adquirió un apartamento en el Condominio Bosque Sereno, situado en el Municipio de Bayamón, el cual fue sometido al régimen de propiedad horizontal el 6 de junio de 2006.[1] A esa escritura se le incorporó como Anejo "A" el Reglamento de Administración del Condominio.[2] Para la discusión de este caso, es pertinente que citemos algunas disposiciones allí dispuestas que inciden directamente sobre el asunto que nos ocupa.

Conforme al Art. 31 inciso A(2) de ese reglamento, estacionarse en áreas restringidas conlleva una multa de $100. En cuanto a esta cláusula no existe controversia. Ahora bien, el caso de autos tiene su génesis en el inciso "E" de ese precepto que añadió lo siguiente:

> [l]uego de tres violaciones a este Reglamento, previa oportunidad de defenderse dada al titular, este quedará privado de su derecho al voto y de cualquier otro uso a las áreas comunes que "LA JUNTA" tenga a bien imponer. Será considerada la multa como un pago debidamente

---

[1] Véase, *Escritura Pública Núm. 25 sobre constitución del régimen de propiedad horizontal*, Apéndice del recurso de apelación, pág. 143.
[2] Íd., pág. 259.

aprobado contra el titular, el cual está obligado a sufragar. **De no hacerlo, se podrán tomar contra el titular multado o sancionado, todas las medidas que provee la Ley de Condominios de Puerto Rico, la escritura matriz, y el presente Reglamento, contra el titular moroso de cuotas de mantenimiento.** (Énfasis nuestro).

Trascendió que durante el año 2011 el administrador del Condominio Bosque Sereno le notificó al señor Ayala tres avisos de multa por la cantidad de $100.00 cada una, por estacionar una motora en un área prohibida. Este último impugnó las multas ante la Junta de Directores del Condominio (la Junta), pero no tuvo éxito. Así las cosas, el 30 de enero de 2012 el administrador le notificó al señor Ayala mediante correo certificado un "Aviso de Corte de Servicios" advirtiéndole que de no pagarlas se le suspenderían los servicios de agua y electricidad a su apartamento, lo que ocurrió el 14 de febrero de 2012, ante la falta de pago.

Ese mismo día el señor Ayala acudió al DACO y presentó una querella en contra de la Junta y del Consejo de Titulares del Condominio en la que impugnó las multas y el corte de los servicios de agua y electricidad.[3] Más adelante, enmendó su reclamación para solicitar, entre otras cosas, que se declarara nulo el inciso (E) del Art. 31 del Reglamento del Condominio en cuanto le permite a la Junta suspender los servicios esenciales ante la existencia

---

[3] Véase, *Querella*, Íd., pág. 138. Trascendió que tras presentar la querella, el señor Ayala pagó las multas el 17 de febrero de 2012 por lo que se le reestablecieron los servicios suspendidos. Véase, *Resolución del Departamento de Asuntos del Consumidor* (DACO) de 4 de abril de 2012. Íd., pág. 3.

de deudas por concepto de multas administrativas, por considerarlo contrario a Derecho.[4]

Atendida la reclamación, el 30 de marzo de 2012 se celebró la vista administrativa. Surge de la Resolución que posteriormente emitiera el DACO que al comienzo de la misma la Junta solicitó que se desestimara la querella.[5] Ello pues alegó, que conforme a la Sec. 26 del Reglamento de Condominios Núm. 6728 del DACO de 2 de diciembre de 2003, esa agencia no tenía jurisdicción para atender una reclamación en la que se cuestionara una cláusula de un reglamento inscrito en el Registro de la Propiedad.

Denegada esa petición, el DACO resolvió los méritos de la querella. Si bien dictaminó que las multas eran procedentes, concluyó que fue ilegal la suspensión de los servicios de agua y electricidad. A esos efectos, señaló que los Arts. 38 (i) y 39 de la Ley de Condominios, Ley 103-2003, 31 L.P.R.A. sec. 1293b(i) y 1293c, autoriza que se suspendan esos servicios únicamente cuando los condóminos adeudan cuotas de mantenimiento, derramas o la parte proporcional del seguro comunal. Conforme a esto, razonó que las deudas por concepto de multas por violación a las normas de sana convivencia dispuestas en el reglamento de un condominio no pueden considerarse para imponer ese tipo de sanción. Por ello, declaró nulo y sin eficacia jurídica la última oración del Art. 31 E del Reglamento del Condominio Bosque Sereno. Además, le

---

[4] Véase, *Enmienda a querella*, Íd., pág. 125.
[5] Véase, Resolución, Íd., pág. 5.

concedió al señor Ayala una indemnización por los gastos en que incurrió en el periodo en que estuvo sin los servicios de agua y electricidad en su apartamento.

En desacuerdo con esa determinación, la Junta presentó una moción de reconsideración que posteriormente se declaró no ha lugar.[6] Inconforme, acudió al Tribunal de Apelaciones mediante un recurso de revisión judicial. Entre otras contenciones, señaló que el DACO erró al asumir jurisdicción para atender la querella del señor Ayala ya que conforme al propio Reglamento de Condominios del DACO, supra, le correspondía al Tribunal de Primera Instancia atender dicha materia.

Examinado el recurso, el Tribunal de Apelaciones emitió sentencia el 21 de diciembre de 2012. Respecto al asunto jurisdiccional, concluyó que el DACO no podía arrogarse jurisdicción para atender la validez y legalidad del Art. 31 del Reglamento del Condominio Bosque Sereno. Fundamentó su decisión en la sección 26 del Reglamento de Condominios del DACO, supra, que preceptúa que toda reclamación que consista en cuestionar una cláusula del reglamento de un condominio, cuando ese reglamento está inscrito en el Registro de la Propiedad, se deberá ventilar ante el Tribunal de Primera Instancia. Por lo tanto, revocó la Resolución de la agencia en cuanto lo declaró nulo y sin eficacia jurídica. Asimismo, determinó que era improcedente la indemnización que le concedió al señor Ayala, ya que

---

[6] Íd, pág. 13. En esta moción la Junta cuestionó nuevamente la jurisdicción del DACO para atender la controversia.

estaba intrínsecamente relacionada al asunto de la legalidad de la suspensión de los servicios de agua y electricidad, que se realizó en virtud del reglamento del condominio.

En desacuerdo con ese dictamen, el DACO presentó ante esta Curia un recurso de apelación y señaló que el foro apelativo intermedio erró al:

> **no pasar juicio sobre la razonabilidad de la decisión del DACO que concluyó que la actuación impugnada de la Junta de Directores del Condominio Bosque Sereno sobre corte de servicios comunales al titular basado en multas no se ajustaba a la Ley de Condominios.[7]**

El DACO sostiene en su alegato que posee jurisdicción para atender querellas tales como la interpuesta por el señor Ayala. Arguye que esta involucraba la impugnación de acciones de una Junta que fueron gravemente perjudiciales para un titular, las cuales se fundamentaron en un reglamento que era contrario a la Ley de Condominios de 2003, supra. Asuntos que a su juicio, quedan dentro del espectro de situaciones que le corresponde atender. Por otro lado, manifiesta que el hecho de no tener jurisdicción porque el reglamento de un condominio esté inscrito en el Registro de la Propiedad troncha sus facultades en un número significativo de los casos que le compete dilucidar al amparo de esa legislación.

El 26 de abril de 2013 acogimos el recurso como uno de *certiorari* y expedimos el mismo. Contando con el beneficio de la comparecencia de las partes, pasamos a resolver.

---

[7] Véase, *Recurso de Apelación,* pág. 7.

II

## A: **Jurisdicción de las agencias administrativas**

La jurisdicción se define como el poder o la autoridad que posee un tribunal o un organismo administrativo para considerar y decidir los asuntos que se sometan ante su consideración. DACo v. AFSCME, 185 D.P.R. 1, 12 (2012). Al igual que los foros judiciales, las agencias administrativas no tienen discreción para asumir jurisdicción donde no la hay. Íd.

Es conocido que para dilucidar qué jurisdicción tiene cierta agencia administrativa en cuanto a un asunto particular se analiza el poder que la Asamblea Legislativa le delegó a esta para determinar, ya sea mediante adjudicación o reglamentación, los derechos y obligaciones de quienes están sujetos a su ámbito de acción. D. Fernández Quiñones, Derecho administrativo y ley de procedimiento administrativo uniforme, Colombia, Forum, 2013, págs. 35-36. Para ello, debemos dirigirnos a la ley habilitadora, también conocida como ley orgánica, que es la disposición que al crear la agencia le delega los poderes necesarios para actuar de conformidad con el propósito legislativo. DACo v. AFSCME, supra, pág. 12; D.A.Co. v. Fcia. San Martín, 175 D.P.R. 198, 203 (2009). Pues es sabido que una agencia administrativa no puede asumir jurisdicción sobre una actividad, materia o conducta cuando no está claramente autorizada por ley para ello. DACo v. AFSCME, supra, pág. 12; López Nieves v. Méndez Torres, 178

D.P.R. 803, 810 (2010); ASG v. Mun. San Juan, 168 D.P.R. 337, 343 (2006). Es decir, sólo puede llevar a cabo las funciones que se le han encomendado legislativamente, aquellas que surgen de su actividad o encomienda principal y ejercer los poderes que sean indispensables para llevar a cabo sus deberes y responsabilidades. Íd. Véase además, Amieiro González v. Pinnacle Real Estate, 173 D.P.R. 363, 371 (2008). Ante esa realidad, al examinar la validez de una reglamentación de una agencia administrativa, los tribunales estamos obligados a analizar: (1) si la actuación administrativa está autorizada por ley; (2) si se delegó el poder de reglamentación; (3) si la reglamentación promulgada está dentro de los poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica; y (5) si la reglamentación es arbitraria o caprichosa. Vista Healthcare v. Hospicio La Fe, res. el 10 de enero de 2014, 2014 T.S.P.R. 3, 190 D.P.R. ___ (2013); OEG v. Santiago Guzmán, res. 11 de marzo de 2013, 2013 T.S.P.R. 31, 188 D.P.R. ____2013).

En ese sentido, las agencias administrativas deben arribar a sus decisiones sin apartarse de la ley habilitadora aun cuando persigan un aparente propósito legítimo. En otras palabras, ni la necesidad ni la conveniencia pueden sustituir a la ley en cuanto a fuente de poder cuasilegislativo o cuasiadjudicativo. DACo v. AFSCME, supra, pág. 12; Amieiro González v. Pinnacle Real Estate, supra, pág. 372; Raimundi v. Productora, 162 D.P.R.

215, 225 (2004). Más aun, hemos resuelto que cualquier duda en cuanto a la existencia de poder cuasilegislativo o cuasiadjudicativo, debe resolverse en contra del ejercicio del mismo. Íd. En otras palabras, las agencias administrativas no pueden actuar más allá de lo que les fue delegado, de manera que toda actuación administrativa que no obedezca el poder que le fue conferido mediante legislación debe catalogarse como *ultra vires*, y por ende, nula. DACo v. AFSCME, supra, pág. 13; Amieiro González v. Pinnacle Real Estate, supra, pág. 371. Véase además, Fernández Quiñones, op cit., págs. 161-165.

Ahora bien, ciertamente la legislatura está imposibilitada de anticipar en forma detallada, minuciosa o específica, la multiplicidad de situaciones que se pueden suscitar ante una agencia administrativa. Así lo reiteramos en Domínguez Castro *et al.* v. E.L.A I., 178 D.P.R. 1, 93 (2010), cuando explicamos que:

> [e]l mundo moderno se caracteriza por la gran complejidad en las relaciones sociales y económicas de las personas, conjuntamente con la progresiva supervisión gubernativa sobre la conducta individual, y ello implica que la legislatura está imposibilitada de anticipar legislativamente, en forma detallada, minuciosa o específica, la multiplicidad de situaciones que puedan surgir de esas relaciones complejas, siendo suficiente [que] la ley en cuestión señale o establezca normas amplias y generales que sirvan de guía o dirección a entidades administrativas expertas, para que éstas, con su experiencia y conocimientos especiales, **apliquen esas normas concretamente a los hechos que puedan surgir y ultimen los detalles que implementen la política general legislativa.**[8](Énfasis nuestro).

---

[8] Citando a Hiltons Hotels v. Junta Salario Mínimo, 74 D.P.R. 670. Págs. 692-693 (1953).

En ese contexto, la ley siempre contendrá criterios amplios y generales que servirán de guía y limitarán el uso de los poderes cuasilegislativos y cuasiadjudicativos de las agencias. Bomberos Unidos v. Cuerpo Bomberos *et al.*, 180 D.P.R. 723, 742 (2011). Empero, dichos criterios no tienen que ser expresos, sino que pueden surgir, inclusive, del historial legislativo. Íd.

En lo que nos concierne, sabemos que al interpretar el alcance de los poderes delegados a una agencia administrativa, no se debe limitar el análisis a una interpretación restrictiva de su estatuto habilitador. D.A.Co. v. Fcia. San Martín, supra, págs. 203-204; ASG v. Mun. San Juan, supra, págs. 343-344. Sobre este particular, las leyes habilitadoras, así como cualquier otra ley, deben interpretarse tomando en cuenta la intención legislativa atribuyéndole un sentido que acierte el resultado pretendido por el legislador. ASG v. Mun. San Juan, supra; Vázquez v. A.R.Pe., 128 D.P.R. 513, 523-524 (1991). Es decir, debemos brindar una interpretación cónsona con la intención legislativa, la política pública y el interés social que la inspira. En ese ejercicio de hermenéutica, las diferentes secciones del estatuto se deberán interpretar en conjunto, de manera armoniosa y no aislada, para así evitar resultados desatinados, confusos, absurdos e irrazonables. Íd. Véase además, Departamento Hacienda v. Telefónica, 164 D.P.R. 195, 214 (2005).

Es conocido que las leyes hay que interpretarlas tomando en consideración que todo acto legislativo persigue unos propósitos, entre estos: corregir un mal, alterar una situación existente, complementar una reglamentación vigente, fomentar algún bien específico, o reconocer algún derecho. Departamento Hacienda v. Telefónica, supra, pág. 214. Empero, siempre debe prevalecer el principio cardinal de que cuando la ley es clara y libre de toda ambigüedad, su letra no puede menospreciarse  bajo el pretexto de cumplir su espíritu. Art. 14 del Código Civil, 31 L.P.R.A. sec. 14. Pues cuando el legislador se ha manifestado en un lenguaje claro e inequívoco, "el texto de la ley es la expresión por excelencia de toda intención legislativa". Departamento Hacienda v. Telefónica, supra, pág. 215.

En este caso existe controversia en cuanto a si el DACO tenía jurisdicción para atender la querella en la que se impugnó una cláusula del Reglamento del Condominio Bosque Sereno. La pugna surge como consecuencia de que fue el propio DACO quien al promulgar el Reglamento de Condominios Núm. 6728, supra, dispuso que no la tendría. A pesar de ello, dicha agencia atendió la querella del señor Ayala.

En ese escenario, la disposición de la presente controversia amerita que  revisemos las leyes que le otorgan jurisdicción al DACO. Luego, debemos evaluar si conforme a la normativa de derecho antes discutida, el DACO actuó de manera ultra vires, tal como lo resolvió el

Tribunal de Apelaciones, o si por el contrario, el ejercicio cuasiadjudicativo que realizó estaba dentro de los contornos dispuestos por el legislador para que actuara. Es necesario que atendamos este asunto con preeminencia, pues de ello depende que podamos entrar en los méritos del recurso. Véase, García v. Hormigonera Mayagüezana, 172 D.P.R. 1 (2007).

> ### i. La jurisdicción del DACO para atender querellas presentadas a la luz de la Ley de Condominios de 2003.

La Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 L.P.R.A. sec. 341 *et seq.*, creó el DACO con el propósito primordial de vindicar e implementar los derechos del consumidor. Esta agencia se concibió como una especializada, con personal profesional y técnico competente para vindicar los derechos del consumidor de forma agresiva y firme. Exposición de Motivos de la Ley Núm. 5, 1973 Leyes de Puerto Rico 17. En otras ocasiones hemos mencionado que lo que inspiró la creación del DACO fue facilitar al consumidor la protección de sus intereses mediante un vehículo procesal ágil, eficiente y costo-efectivo. Véase, Martínez v. Rosado, 165 D.P.R. 582, 592-592 (2005). Por eso, su sistema administrativo debe ser más flexible que el de los trámites judiciales ordinarios, de lo contrario, se derrotaría todo su propósito. Íd.

Luego de la aprobación de la Ley Núm. 5, supra, el legislador amplió el ámbito jurisdiccional de esa agencia para que atendiera ciertos asuntos relativos a la Ley Núm.

104 de 25 de junio de 1958, según enmendada, conocida como Ley de Propiedad Horizontal[9]. En específico, la Sec. 9 de la Ley Núm. 157 de 4 de junio de 1976[10], amplió el alcance del Art. 42 de la referida Ley de Propiedad Horizontal, entre otros propósitos, para distinguir entre condominios dedicados a comercios o establecimientos no residenciales y aquellos en que por lo menos existiera un apartamiento dedicado a vivienda. Véase, Pereira Suárez v. Jta. Dir. Cond., 182 D.P.R. 485, 498 (2011). Esa distinción fue importante toda vez que el foro donde se presentaran las impugnaciones de los titulares por violaciones a esa legislación dependía de la naturaleza del condominio en cuestión, a saber, si era uno residencial o uno comercial. En los condominios no residenciales dichas acciones se presentarían en el extinto Tribunal Superior. De otra parte, cuando se tratara de condominios dedicados a viviendas, se ventilarían ante el DACO. Sec. 10 de la Ley Núm. 157, supra. Véase además, Consejo Cond. Plaza del Mar v. Jetter, 169 D.P.R. 643, 659-661 (2006).

En enésimas ocasiones nos hemos pronunciado en cuanto a diversas controversias surgidas a la luz de ese estatuto.[11] Y es que no era de menos esperarse, pues son

---

[9] Posteriormente redenominada como la *Ley de Condominios*. Para una exposición más detallada sobre el surgimiento de este régimen en Puerto Rico, véase, Bravman, González v. Consejo Titulares, 183 D.P.R. 827 (2011).
[10] 1976 Leyes de Puerto Rico 484.
[11] Véanse por ejemplo: Consejo Titulares v. Ramos Vázquez, 186 D.P.R. 311(2012); Consejo de Titulares v. Gómez Estremera, et al., 184 D.P.R. 407(2012); Consejo Cond. Plaza del Mar v. Jetter, 169 D.P.R. 643, (2006); Asoc. Cond. Balcones S. Ma. v. Los Frailes, 154 D.P.R. 800(2001); Maldonado v. Consejo de Titulares, 111 D.P.R. 427(1981).

múltiples los problemas que pueden surgir en un régimen de convivencia de horizontalidad. Ante ello, la Ley de Condominios de 2003, supra, enmendó la otrora Ley de Propiedad Horizontal para establecer nuevos mecanismos para la tramitación de los inevitables conflictos dimanantes del modo de vida en un condominio, dotar de mayor eficacia ese régimen, y atender más adecuadamente el derecho de los titulares. Véase, Exposición de Motivos de la Ley Núm. 103-2003, P. del S. 1425 de 5 de abril de 2003. En cuanto a la jurisdicción de los diferentes foros para atender las controversias que se suscitaran a la luz de la misma, se enmendó el Art. 42 de la Ley Núm. 104, supra, para que leyera como sigue:

> [l]os acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores, del titular que somete el inmueble al régimen que establece este capítulo, durante el período de administración que contempla la sec. 1293-1 de este título, del Presidente y del Secretario, concernientes a la administración de inmuebles que no comprendan apartamientos destinados a vivienda o de titulares de apartamientos no residenciales en los condominios en donde exista por lo menos un apartamiento dedicado a vivienda, serán impugnables ante el Tribunal de Primera Instancia por cualquier titular que estimase que el acuerdo, determinación, omisión o actuación en cuestión es gravemente perjudicial para él o para la comunidad de titulares o es contrario a la ley, a la escritura de constitución o al Reglamento a que hace referencia la sec. 1293 de este título. **Las impugnaciones por los titulares de apartamientos destinados a viviendas se presentarán ante el Departamento de Asuntos del Consumidor.** (Énfasis nuestro). 31 L.P.R.A. sec. 1393f.

Para cumplir con esos propósitos la Ley de Condominios de 2003 creó una división especial dentro del DACO para que

atendiera **"exclusivamente, <u>todo</u> lo concerniente a los condominios"**. (Énfasis y subrayado nuestro). Véase, Exposición de Motivos de la Ley Núm. 103-2003, <u>supra</u>, pág. 3. Al respecto, el Art. 48 de ese estatuto estableció lo siguiente:

> [s]e crea en el Departamento de Asuntos del Consumidor una División Especial de Adjudicación de Querellas de Condominios, para atender **<u>todo</u> lo relacionado a <u>todo</u> condominio en el que exista por lo menos un apartamiento dedicado a vivienda.** Esta División tendrá un Director como Jefe, nombrado por el Secretario de dicho departamento. Sujeto a las disposiciones de la Ley de Personal vigente, el Secretario nombrará, además, los supervisores, inspectores, funcionarios de consulta, oficiales examinadores o jueces administrativos, abogados del interés público y el personal administrativo necesario para la **pronta atención de las querellas presentadas por los titulares de apartamientos al amparo de este capítulo,** o por la Junta de Directores al amparo de aquellas leyes especiales aplicables. (Énfasis y subrayado nuestro). 31 L.P.R.A. sec. 1294.

Cabe señalar que durante el proceso de aprobación de la Ley de Condominios de 2003 se resaltó que esa era la agencia con el peritaje para atender las controversias presentadas por los titulares de apartamentos residenciales sometidos al régimen de propiedad horizontal, pues había manejado esos asuntos hace décadas. Véase, Informe Conjunto de las Comisiones de Vivienda, de Banca y Asuntos del Consumidor, y de lo Jurídico sobre el P. del S. 1425 de 12 de noviembre de 2002, 14ta Asamblea Legislativa, 4ta Sesión Ordinaria. Véase también, <u>First Fed. Savs v. Asoc. De Condómines</u>, 114 D.P.R. 426 (1983). Como señala el Profesor Godreau, esta División se creó para asegurarse de que los jueces administrativos que atienden querellas de

condominios fueran funcionarios verdaderamente especializados en la Ley y en los reglamentos aplicables. Esto, para facilitar la solución uniforme y consecuente de las controversias típicas de los condominios por profesionales especializados en la propiedad horizontal. M.J. Godreau, La Nueva Ley de Condominios, San Juan, Puerto Rico, Ed. Dictum, 2003, pág. 40. Se desprende del Diario de Sesiones de la Cámara de Representantes de 5 de marzo de 2003 que esta nueva División:

> se [creó] para beneficio del consumidor puertorriqueño … para atender las querellas que se presentan en el Departamento, y no atenderlas de forma uniforme a todas las demás querellas que se presentan en ese Departamento. Ahora el Secretario del DACO es responsable de crear una división especializada con personal especializado para aligerar la solución de estas querellas que se presentan en este Departamento.

El Art. 48 de la Ley de Condominios de 2003, supra, también facultó al Secretario del DACO para que adoptara un reglamento especial para la adjudicación de las querellas presentadas en esa nueva división. Con ese propósito se promulgó el Reglamento de Condominios Núm. 6728 que ya hemos mencionado, que entre otros aspectos, regula la jurisdicción de la agencia para atender las querellas que se presentan al amparo de la Ley de Condominios. En lo que nos concierne, la Sec. 26 del mismo dispone como sigue:

> [c]ualquier titular o grupo de titulares de condominios donde exista por lo menos una unidad de vivienda, podrá impugnar ante este Departamento cualquier acuerdo, determinación, omisión o actuación del Consejo de Titulares, del Director o de la Junta de Directores, presidente o del secretario de la Junta de Directores o de la persona que someta el inmueble al Régimen de

Propiedad Horizontal, mientras éste sea a su vez, el administrador interino del condominio y del Síndico; siempre y cuando el acuerdo, determinación, omisión o actuación en cuestión sea gravemente perjudicial para el titular o grupo de titulares que impugna o para la comunidad de titulares o cuando dicho acuerdo, determinación, omisión o actuación sea contraria a la Ley, a la escritura de constitución al Régimen de Propiedad Horizontal, al Reglamento del Condominio y a este Reglamento.

Ahora bien, excluyó de la jurisdicción del DACO ciertos asuntos[12], entre ellos:

toda reclamación que consista en cuestionar alguna cláusula contenida en la escritura matriz o el reglamento del condominio inscrito en el Registro de la Propiedad. (…) La jurisdicción para ventilar estas acciones corresponderá al Tribunal de Primera Instancia.

En varias ocasiones esta Curia ha hecho referencia a esa disposición reglamentaria para auscultar al ámbito jurisdiccional del DACO para atender ciertas controversias.[13] No obstante, no habíamos tenido la oportunidad de abordar esa sección en cuanto a la limitación que impone para entender en un asunto como el que nos ocupa. La Junta sostiene que el DACO no tenía jurisdicción para atender la querella del señor Ayala en virtud de la sección 26 del Reglamento Núm. 6728.

---

[12] El Departamento no tendrá jurisdicción para entender en controversias que surjan contra el agente administrador. Las mismas corresponderán atenderlas al Director o la Junta de Directores y al Consejo de Titulares. El Departamento no tendrá jurisdicción para adjudicar querellas que surjan en condominios de uso exclusivamente comercial o profesional. Igualmente carecerá de jurisdicción en aquellos condominios donde exista por lo menos una unidad de vivienda, y la querella sea interpuesta por un titular o grupo de titulares de apartamentos no residenciales. En estos casos la jurisdicción corresponderá al Tribunal de Primera Instancia. El Departamento sólo atenderá reclamaciones del titular o grupo de titulares que sean propietarios de las unidades residenciales.
[13] Véase, por ejemplo, Consejo de Titulares v. Gómez Estremera, et al., 184 D.P.R. 407(2012).

Ciertamente, las agencias administrativas están obligadas a cumplir sus propios reglamentos una vez los promulgan. Precisamente, fue en ese artículo que se amparó el Tribunal de Apelaciones para revocar la resolución del DACO, siendo este un caso anómalo, pues la agencia no obedeció su propio reglamento para finalmente asumir jurisdicción sobre un asunto en el cual se había abstenido de intervenir. Examinemos este particular.

Las agencias administrativas tienen la facultad de adoptar reglas de carácter legislativo según le haya delegado la Asamblea Legislativa.[14] Buono Correa v. Srio. Rec. Naturales, 177 D.P.R. 415, 449 (2009). Como ya aludimos, cuando una agencia administrativa promulga un reglamento de este tipo, este tiene fuerza de ley por ser de carácter vinculante y determinante en cuanto a los derechos, deberes y obligaciones de las personas sujetas a la jurisdicción de la agencia. López Leyro v. E.L.A., 173 D.P.R. 15, 24-25 (2008); Torres Arzola v. Policía de P.R., 117 D.P.R. 204, 211 (1986). Por ello, una vez se aprueba, la ciudadanía en general, incluyendo la propia agencia que lo adoptó, están obligados por este. Íd. De conformidad con ello, hemos expresado que después de que una agencia define los contornos de su acción mediante un reglamento, tiene la responsabilidad de aplicarlo celosamente. Íd.

---

[14] Una regla legislativa es aquella que crea derechos, impone obligaciones y establece un patrón de conducta con fuerza de ley. Véase, Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 692 (2000).

Ahora bien, cuando las agencias promulgan un reglamento se requiere que lo hagan en cumplimiento con los parámetros pautados por su ley orgánica. Buono Correa v. Vélez Arocho, supra, págs. 449-450. Al respecto, es importante recalcar que si bien una agencia no puede actuar más allá de lo autorizado por ley **tampoco puede imponer mediante un reglamento más limitaciones de lo que autorice su ley habilitadora**. Vista Healthcare v. Hospicio La Fe, supra; Gutiérrez v. A.A.A., 167 D.P.R. 130, 143 (2006). Véase, además, M. & B. S., Inc. v. Depto. de Agricultura, 118 D.P.R. 319 (1987). El tribunal en su función revisora determinará si la actuación administrativa se ajusta o no al poder delegado.[15] D.A.C.O. v. Servidores Públicos Unidos de P.R., 187 D.P.R. 704 (2013). Sabemos que en esa tarea debemos dar deferencia a la interpretación que realizan las agencias administrativas en cuanto a sus propios reglamentos, no obstante, esas interpretaciones deben estar en concordancia con su ley orgánica. López Leyro v. E.L.A., supra, págs. 25-26. La presunción de corrección de las decisiones administrativas cede cuando el organismo administrativo desobedece el mandato legislativo pautado en

---

[15] En ese sentido debemos tener en cuenta que al evaluar el ejercicio cuasilegislativo de alguna agencia administrativa debemos observar, entre otros aspectos, si la actuación administrativa estaba autorizada por ley, si se delegó el poder de reglamentación, si la regla o reglamento impugnado está dentro de los amplios poderes delegados y si la reglamentación es arbitraria o caprichosa. Danosa Caribbean v. Neg. Asist. Contr., 185 D.P.R. 1008, 1029-1030 (2012). Nótese que en este caso no se está impugnando el Reglamento Núm. 6728 del DACO. No obstante, es importante que justipreciemos el contenido de su Sec. Núm. 26 para evaluar si efectivamente el DACO ostentaba o no ostentaba jurisdicción para atender la querella del señor Ayala.

una ley. <u>Trigo Margarida v. Junta Directores</u>, 187 D.P.R. 384, 394 (2012).

> **ii. Jurisdicción del DACO para atender controversias relacionadas a impugnaciones de cláusulas de reglamentos que constan inscritos en el Registro de la Propiedad.**

Es sabido que la jurisdicción del DACO no se extiende a toda causa de acción que pueda surgir en un condominio sometido al régimen de propiedad horizontal. Así lo hemos reiterado en varias ocasiones. Sin embargo, es menester señalar que las veces en que hemos hecho alusión a ese principio ha sido en situaciones en las que era evidente que cierto tipo de acción quedaba fuera de su jurisdicción. Así por ejemplo, en <u>Consejo Cond. Plaza del Mar v. Jetter</u>, supra, pág. 662, enunciamos que DACO no tiene jurisdicción para dirimir controversias sobre actos que no sean de índole voluntaria o que trasciendan los intereses personales y privados de los titulares. Véase también, <u>Consejo de Titulares v. Gómez Estremera</u> *et al.,* 184 D.P.R. 407 (2012). No obstante, a la luz del marco normativo discutido, hoy arribamos a la conclusión de que el legislador sí le confirió al DACO el poder de adjudicar controversias relativas a la impugnación de reglamentos aun cuando estos se encuentren inscritos en el Registro de la Propiedad, y aun cuando el propio DACO haya limitado su autoridad para adjudicar esos asuntos. Veamos.

Del Art. 48 de la Ley de Condominios, <u>supra</u>, que creó en el DACO la División Especial para la adjudicación de

querellas de condominios, no se desprende que el legislador haya hecho una reserva específica dentro del universo de "todos los asuntos de condominios" que le delegó atender a esa agencia. Nótese que sí lo hizo en cuanto a los asuntos referentes a la cubierta de seguros. Específicamente, estatuyó en cuanto a esto que toda querella relacionada con la cubierta o los términos del contrato de seguros fuera referida a la Oficina del Comisionado de Seguros de Puerto Rico para su consideración. No existe reserva adicional –claro está, considerando a las que ya hicimos alusión- en cuanto a la jurisdicción del DACO relativa a las impugnaciones presentadas por los titulares contra el Consejo de Titulares o contra la Junta de Directores.

Por otra parte, el Art. 42 de la Ley de Condominios, _supra_, establece una serie de actos que se pueden impugnar ante los foros judiciales o administrativos. Estos son los siguientes: los acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores, del titular que somete el inmueble al régimen de propiedad horizontal durante el periodo de administración y los acuerdos del Presidente y del Secretario cuando dicho acuerdo, determinación, omisión o actuación resulta gravemente perjudicial para el titular o es _contrario a la ley_, a la escritura matriz o al reglamento del condominio. Luego, dicho articulado procede a establecer en qué foro se dilucidarán estas controversias dependiendo _única y exclusivamente_ de la naturaleza

residencial o comercial del inmueble. Específicamente, señala que este tipo de impugnaciones se presentarán en el DACO cuando quien impugne sea un titular de un apartamento destinado a vivienda. No se contempla ninguna otra salvedad.

De lo antes discutido, no vemos razón para concluir que dentro de los criterios amplios y generales que dispuso el legislador en la Ley de Condominios, el campo de actuación del DACO respecto a las controversias sobre la validez de los reglamentos de los condominios sometidos al régimen de propiedad horizontal deba limitarse. No surge de la intención legislativa que el ejercicio de la agencia en cuanto a estos asuntos quedara supeditado a que los reglamentos de los condominios estuvieran o no estuvieran inscritos en el Registro de la Propiedad.

Por lo tanto, constituye un error manifiesto que el propio DACO se haya impuesto más limitaciones que las que determinó la Ley de Condominios al crear la División Especial del DACO con el propósito de que atendiera las controversias suscitadas bajo esa ley. Al así hacerlo, actuó en contravención a la ley que le otorgó los parámetros jurisdiccionales necesarios para que ejerciera el propósito por el cual se concibió dicha dependencia en la agencia. Por ello, no podemos avalar ese curso de acción, la interpretación que a esos efectos realizó el Tribunal de Apelaciones, pues tiene como consecuencia que

la agencia administrativa evada las responsabilidades que le fueron delegadas por la Asamblea Legislativa.

De otra parte, si bien es cierto que la jurisdicción que se le confirió al DACO no se extiende a toda causa de acción que dimane del régimen de horizontalidad, su reglamento no puede imponer más limitaciones que las dispuestas en la ley. Esa limitación consignada en la Sec. 26 del Reglamento Núm. 6728 no es cónsona con el propósito legislativo. Máxime, cuando el propio Reglamento de Condominios Núm. 6728, supra, establece en su Sec. 4 que sus disposiciones se deberán interpretar liberalmente a favor de los titulares, en ánimo de **cumplir los mandatos de la Ley de Condominios.** Como ya mencionamos, uno de los asuntos que el legislador consideró que los titulares podían impugnar ante el DACO eran las determinaciones, omisiones o actuaciones de la Junta cuando dicha omisión, determinación o actuación es contraria a la ley. Uno de esos asuntos puede ocurrir cuando el propio reglamento del condominio sea ilegal en sí. Debemos considerar en ese sentido que la propia Ley de Condominios dictamina en su Art. 37 que el reglamento de administración del condominio "deberá insertarse en la escritura [de constitución del régimen de propiedad horizontal], o … se agregará a dicha escritura". 31 L.P.R.A. sec. 1293. Y añade que "copia certificada… del Reglamento, y de toda enmienda a los mismos, deberá quedar archivada en el Registro de la Propiedad". Íd. Por lo tanto, es de esperarse que en la

mayoría de las ocasiones en que los titulares impugnen actos de la Junta de Directores fundamentados en un reglamento que contenga cláusulas ilegales, ese reglamento conste inscrito en el Registro de la Propiedad.

Ante esto, la interpretación del Tribunal de Apelaciones implicaría dejar desprovisto de un remedio ágil y económico a los titulares si la acción u omisión que impugnan está amparada en alguna cláusula del reglamento del condominio. **Por lo tanto, resolvemos que de las disposiciones de la Ley de Condominios de 2003, supra, se desprende que el DACO tiene jurisdicción para atender una querella en la que se impugna la cláusula de un reglamento de un condominio aun cuando este se encuentre inscrito en el Registro de la Propiedad.**[16] En consecuencia, el DACO no podía coartar la jurisdicción que el legislador le confirió expresamente.

Finiquitado ese asunto, pasemos a dirimir si el DACO resolvió correctamente cuando determinó que la cláusula 31E del Reglamento del Condominio Bosque Sereno era nula.

**III**

Conforme a la Ley de Condominios de 2003, supra, la administración de todo inmueble sometido al régimen de propiedad horizontal se regirá —en unión a las disposiciones de la ley— por un reglamento que deberá insertarse en la escritura de constitución del régimen o

---

[16] Claro está, ello no implica que el Departamento de Asuntos del Consumidor (DACO) tenga la facultad de ordenarle al Registrador de la Propiedad que realice acto alguno con respecto a un reglamento que conste inscrito en el Registro de la Propiedad.

que se agregará a la misma. 31 L.P.R.A. sec. 1293. Como ya mencionamos, ese Reglamento se inscribirá en el Registro de la Propiedad, de manera que sus disposiciones son oponibles frente a terceros. Art. 37 de la Ley de Condominios, 31 L.P.R.A. sec. 1293a. Este reglamento debe contener ciertos extremos obligatorios, entre ellos: el sistema de convocatoria uniforme para las asambleas de los titulares, la definición del concepto de mayoría que regirá el inmueble, la manera de recaudar los fondos para los gastos comunes y la forma de administración del condominio. 31 L.P.R.A. sec. 1293a. Dicho articulado es enfático al establecer que las normas o reglas en torno al uso del inmueble y sus apartamientos, ejercicios de derechos, instalaciones y servicios, gastos, administración y gobierno **no pueden contravenir las disposiciones de la Ley de Condominios.** En este caso, es preciso abordar la legalidad de la suspensión de servicios esenciales como consecuencia de la falta de pago de multas administrativas según se estableció en el Art. 31E del Reglamento del Condominio Bosque Sereno. Examinemos este particular.

La Ley de Condominios, _supra_, regula en su Art. 39 lo concerniente a las contribuciones para el pago de los gastos de administración y conservación del inmueble. 31 L.P.R.A. sec. 1293c. Allí se establece que los titulares de los apartamentos están obligados a contribuir proporcionalmente a los gastos de administración, conservación y reparación de los elementos comunes

generales del inmueble y otros gastos según se hayan acordado legítimamente. Hemos reiterado que estas contribuciones -las llamadas cuotas de mantenimiento- son para preservar las mejores condiciones de los elementos comunes y facilitar su uso. Asoc. Cond. Balcones S. Ma. v. Los Frailes, 154 D.P.R. 800, 815 (2001). Desde Maldonado v. Consejo de Titulares, 111 D.P.R. 427, 430 (1981) señalamos que:

> [l]as cuotas que los titulares vienen obligados a satisfacer son precisamente para preservar las mejores condiciones de los elementos comunes, facilitar su uso y, sobre todo, garantizar el buen funcionamiento del régimen. Sin la aportación proporcional a las expensas del inmueble, el régimen no puede sobrevivir y se derrotaría la política pública al respecto. Sin embargo, hoy día la morosidad en el pago de las cuotas de mantenimiento parece ser endémica.

En el caso precitado nos correspondió atender si el Consejo de Titulares de un condominio sometido al régimen de Propiedad Horizontal podía acordar válidamente suspender el servicio de agua potable a un condómino moroso en el pago de sus cuotas de mantenimiento. Tras analizar la Ley de Propiedad Horizontal resolvimos que ello no iba en contra de la ley, la moral o el orden público, sino que al contrario, propendía a la plena realización de la política pública recogida en esa ley. Hoy día, el Art. 39 de la Ley de Condominios, supra, preceptúa que:

> [a]quellos titulares que adeuden tres (3) o más plazos consecutivos de cuotas, independientemente del número de apartamientos [sic] de que sean propietarios, quedarán temporalmente privados de ejercer su derecho al voto en las reuniones del Consejo de Titulares, incluidos aquellos asuntos que requieran el consentimiento unánime; ni se

contará su voto o su porcentaje de participación para propósitos de quórum cuando este capítulo requiera tal consentimiento, hasta tanto satisfagan la deuda en su totalidad o el Tesorero certifique que el titular está al día en el plan de pago aprobado por la Junta de Directores con anterioridad a la asamblea en cuestión. Además la Junta de Directores podrá ordenar la <u>suspensión del servicio de agua potable, electricidad, gas, teléfono, así como los servicios de transmisión de voz, video y data, y cualquier otro servicio similar cuando el suministro de éstos llega por medio de instalaciones que constituyen elementos comunes generales del inmueble</u>. La suspensión podrá ordenarse también cuando el titular no pague su parte proporcional del seguro comunal. (Subrayado nuestro). 31 L.P.R.A. sec. 1293c.

Antes de sus posteriores enmiendas, ese Art. 39 según promulgado en la Ley Núm. 157, *supra*, establecía en cuanto a esto que:

Aquellos titulares que adeuden tres (3) o más plazos consecutivos, quedarán temporalmente privados de ejercer su derecho al voto en las reuniones del Consejo de Titulares hasta tanto satisfaga la deuda en su totalidad. 1976 Leyes de Puerto Rico 505.

Posteriormente, la Ley Núm. 129-1994 enmendó los Arts. 38 y 39 de la anterior Ley de Propiedad Horizontal para garantizar el funcionamiento de los elementos comunes de un inmueble sometido al régimen cuando hay condóminos morosos que no aportan a las cuotas de mantenimiento. 1994 Leyes de Puerto Rico 1239. A esos propósitos se estatuyó que se le podría suspender el servicio de agua potable, electricidad, gas, teléfono y cualquier otro servicio similar suministrado por medio de elementos comunes del inmueble, a los titulares que adeudaran tres o más plazos consecutivos de sus cuotas. Véanse, Secs. 1 y 2 de la Ley

Núm. 129, _supra_. En la Exposición de Motivos de esa legislación se estableció lo siguiente:

> El propósito de la presente medida es garantizar que un inmueble sometido al régimen de propiedad horizontal, no se vea afectado en su funcionamiento cuando condómines morosos se atrasan exageradamente en sus **cuotas de mantenimiento** y provoquen con esto que los demás condómines tengan que cubrir los gastos de aquéllos para mantener en funcionamiento los **elementos comunes.**
>
> Es necesario proveerle a la Junta o Consejo de Titulares **un medio para ser utilizado cuando se han agotado los recursos en cuanto al cobro de las cuotas adeudadas** y el condómine moroso se niega a satisfacer esa deuda. Es injusto que los demás titulares tengan que verse afectados cuando para el buen funcionamiento del inmueble hay que sufragar esos gastos.
>
> No podemos permitir que abusivamente, perjudique a los demás titulares cuando no exista justificación para los atrasos en el pago, de la **cuota de mantenimiento.**
>
> Esta ley facultará al Consejo de Titulares a **ordenar la suspensión de aquellos servicios que se reciben a través o por medio de los elementos comunes cuando algún condómine se atrase injustificadamente en el pago de la cuota de mantenimiento** por un término igual o mayor a tres pagos y no satisfaga la totalidad **de dicha deuda** a pesar de habérsele requerido. (Énfasis nuestro). 1994 Leyes de Puerto Rico 1239-1240.

Como podemos apreciar, el propósito de establecer esa medida fue persuadir a los titulares a que pagaran puntualmente las cuotas necesarias para mantener los elementos comunes del inmueble para el buen funcionamiento del mismo. Actualmente, el Art. 38 de la Ley de Condominios dispone que la Junta podrá:

> [o]rdenar que se suspendan los servicios recibidos a través o por medio de los elementos comunes generales, incluidos los servicios de agua, gas, electricidad, teléfono y/cualquier

otro servicio similar a éstos, a aquellos condóminos morosos que, al **no pagar sus cuotas de mantenimiento** o su parte proporcional del seguro comunal, se sirven graciosamente de los elementos a cuyo mantenimiento no contribuyen como les corresponde, adeudan **dos (2) o más plazos consecutivos de sus cuotas.** … Cuando se trate de **una derrama**, cuyos plazos no se hayan incorporado a la cuota de mantenimiento mensual, la suspensión de los servicios podrá efectuarse una vez transcurridos dos (2) meses desde el plazo final establecido para su pago… (Énfasis nuestro). 31 L.P.R.A. sec. 1293b.

Al discutirse la Ley de Condominios de 2003, supra, en la Cámara de Representantes se mencionó lo siguiente en cuanto a la suspensión de servicios que contempla el artículo precitado:

> [o]tra gran iniciativa que me parece importante destacar, es que hemos sido un poco más rigurosos en el área de la suspensión del servicio por el pago de **incumplimiento de cuotas, el famoso corte de agua y de luz** que ha sido algo que se ha cuestionado grandemente. (Énfasis nuestro) Diario de Sesiones de la Cámara de Representantes de 5 de marzo de 2003, supra, pág. 3.

Como nos señala el Profesor Godreau, "[e]l carácter especial con que el legislador ha dotado la deuda de mantenimiento en un condominio impide aceptar interpretaciones que debiliten los mecanismos que garanticen su cobro". M. J. Godreau, La nueva Ley de Condominios, op cit., pág. 53. Por ello, el legislador quiso ser riguroso con este asunto. Ese tipo de deuda se consideró como una revestida de alto interés público. Informe Conjunto del Senado, supra, pág. 32.

La cláusula del Reglamento del Condominio Bosque Sereno impugnada por el señor Ayala establece el corte de los servicios esenciales que se suplen mediante elementos

comunes del inmueble como penalidad ante la falta de pago de multas administrativas por infracciones dispuestas en el reglamento. Es decir, le impone para ese caso la misma sanción que la Ley de Condominios contempla para los deudores morosos de cuotas de mantenimiento. El DACO resolvió que ello es contrario a la Ley de Condominios, e igual hacemos nosotros. Veamos.

Debido a la importancia que reviste el pago de las cuotas para el mantenimiento de las áreas comunes es que el legislador fue enérgico y diseñó este mecanismo especial para compeler a los titulares a que no incurrieran en atrasos en el pago de las mismas. Ahora bien, ello no está contemplado para el caso de multas administrativas por violaciones a las normas de sana convivencia contenidas en el reglamento de un condominio que regulen acciones u omisiones ajenas a deudas de mantenimiento, derramas o su parte proporcional del seguro comunal. No existe indicio alguno en la intención legislativa de que se hubiese querido extender ese tratamiento a otro tipo de deudas, todo lo contrario. La única instancia en la que procede la suspensión de dichos servicios es cuando acontece la falta del pago de cuotas de mantenimiento o su parte proporcional del seguro comunal, lo que implica que el titular no está contribuyendo al mantenimiento de las áreas comunes por las cuales se suplen estos.[17] Sería una extralimitación

---

[17] Así lo señalamos en Maldonado v. Consejo de Titulares, 111 D.P.R. 427, 430 (1981), cuando expresamos, ante unos hechos en que un titular

suspender este tipo de servicios a un titular que ha cumplido con el pago de sus cuotas, por faltas a otras normas que el legislador no contempló para ese tipo de sanción. Además, ese no es un procedimiento que la Junta de Directores pueda realizar arbitrariamente. En ese sentido, la ley contempla un trámite específico para ello, y de hecho, establece unas salvaguardas para cuando esa medida pueda significar un riesgo para la seguridad y la salud del titular moroso. Véase, Art. 39 de la Ley de Condominios, 31 L.P.R.A. sec. 1293c. **Por lo tanto, actuó acertadamente el DACO al resolver que la cláusula 31E del reglamento del Condominio Bosque Sereno es contraria a Derecho por contemplar un mecanismo de acción no permitido por la Ley de Condominios de 2003.**

Por último, la Junta aduce en su alegato que la propia Ley de Condominios, al conferirle la facultad de cobrar las deudas que los titulares mantienen con la comunidad e imponer multas por infracciones a las reglas de sana convivencia y cobrar las mismas, tácitamente le autorizó a ejecutar las acciones que sean necesarias para ese propósito.[18] Sostiene que de impedirle lo que estipula el Art. 31E del Reglamento del Condominio Bosque Sereno, esas

---

había incurrido en morosidad en cuanto a sus cuotas de mantenimiento, que:

> "A pesar de que no paga, el demandante **se beneficia de todos los elementos comunes generales, tales como el uso de los ascensores, patio, piscina, escaleras, líneas eléctricas comunales, tubería de agua potable comunal, tubería de desagüe comunal, bomba de agua potable, cisterna, iluminación exterior, vestíbulo y pasillos de acceso a su apartamiento**".(Énfasis nuestro).

[18] Alegato de la parte recurrida, pág. 9.

multas por infracciones quedarían impunes.[19] Argumentan, que quedarían huérfanos de compeler a un titular infractor a que pague voluntariamente las deudas por ese concepto, pues sostiene que de no poder suspender los servicios esenciales como medida disuasiva, no podrían velar por el fiel cumplimiento del reglamento del condominio. Rechazamos tal contención. Veamos.

La Ley de Condominios le asigna responsabilidades a todos los componentes del régimen de propiedad horizontal, es decir, a los titulares, al consejo de titulares y a la Junta de Directores. Para ello les exige obrar según principios de buena fe, tanto en el quehacer administrativo como en el privado. Consejo Titulares v. Ramos Vázquez, 186 D.P.R. 311,327 (2012). Esta ley en su Art. 38 (j) faculta al Consejo de Titulares a autorizar a la Junta de Directores  -mediante delegación expresa en el Reglamento- a imponer multas de hasta $100 al titular o residente que viole las normas de convivencia estatuidas en la escritura matriz, la ley o el reglamento del condominio.

En este caso, el Reglamento del Condominio Bosque Sereno dispone una norma sobre los lugares designados para estacionar vehículos de motor. Estamos contestes en que la Ley de Condominios le reconoce al Director o la Junta de Directores el deber y la facultad de cumplir y hacer cumplir las disposiciones de ese reglamento. La responsabilidad fundamental de la Junta de Directores

---

[19] Íd., pág. 10.

"estriba en velar por el buen funcionamiento del condominio logrando que se ejecuten las disposiciones de la Ley de Propiedad Horizontal, de la Escritura Matriz, del Reglamento del Condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente convocadas por el Consejo de Titulares". M.J. Godreau, <u>Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la Junta de Directores y del presidente para llevar acciones a nombre del condominio</u>, 64 (Núm. 3) Rev. Jur. U.P.R. 481, 481 (1995). Así lo señala la ley al prescribir en su Art. 38-D que la Junta de Directores tendrá el deber de "[a]tender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares". 31 L.P.R.A. sec. 1293b-4 (i). Además, tiene todos los deberes que le sean asignados. 31 L.P.R.A. 1293b-4. Empero, **estos deben ejecutarse dentro de los parámetros definidos en la ley**.

No nos persuade el argumento de la Junta a los efectos de que quedarían desprovistos de medios eficientes para hacer cumplir las normas de administración dispuestas en el reglamento del condominio. Como se sabe, el Art. 15 de la Ley de Condominios establece que el uso y disfrute de cada apartamiento estará sometido a ciertas reglas allí

enumeradas. 31 L.P.R.A. sec. 1291m. Este precepto establece

categóricamente, entre otras exigencias, que

> todo titular u ocupante cumplirá estrictamente
> con las disposiciones e administración que se
> consignen en este capítulo, en la escritura o el
> Reglamento a que se refiere la sec. 1293 de este
> título.

Al hacer referencia a las infracciones a este tipo de

normas dicho precepto señala que:

> la infracción de estos principios […] **dará lugar
> al ejercicio de la acción de daños y perjuicios
> por aquel titular u ocupante que resulte
> afectado, además de cualquier otra acción que
> corresponda en derecho, incluidos los
> interdictos, las disposiciones dispuestas en la
> Ley sobre Controversias y Estados Provisionales
> de Derecho**, secs. 2871 et seq. Del Título 32, y
> cualquier otro remedio en equidad. (Énfasis
> nuestro).

Por consiguiente, razonamos que estos son los mismos

remedios y acciones judiciales que tiene disponible una

Junta de Directores de un condominio para hacer cumplir

las disposiciones del reglamento de administración. Claro

está, además de aquellos medios que se dispongan en el

reglamento siempre y cuando no sean contrarios a la ley.

IV

Por los fundamentos que anteceden, resolvemos que el

DACO tiene jurisdicción para atender querellas en las que

se impugne: (1) la validez de una cláusula de un

reglamento de un condominio, aun cuando dicho cuerpo

reglamentario conste inscrito en el Registro de la

Propiedad y (2) actos realizados por una Junta de

Directores de un Condominio, aun cuando estos actos se

fundamenten en las disposiciones de un reglamento que esté

inscrito en el Registro de la Propiedad. Así también, colegimos que conforme al Art. 38 de la Ley de Condominios de 2003, 31 L.P.R.A. sec. 1293b, la suspensión de los servicios esenciales que se suplen mediante elementos comunes generales únicamente procede contra el titular moroso que adeuda cuotas de mantenimiento, derramas o su parte proporcional del seguro comunal.

En consecuencia, revocamos la sentencia del Tribunal de Apelaciones que dispuso que el DACO no tiene jurisdicción para adjudicar la validez o nulidad del Art. 31E del Reglamento del Condominio Bosque Sereno.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Joel Ayala Hernández
Peticionario

v.

Junta de Directores Condominio y
Consejo de Titulares del
Condominio Bosque Sereno
Recurrido

Certiorari

AC-2013-0011

SENTENCIA

En San Juan, Puerto Rico, a 10 de marzo de 2014.

Por los fundamentos expuestos en la Opinión que antecede, revocamos la sentencia recurrida. Resolvemos que el DACO tiene jurisdicción para atender querellas en las que se impugne: (1) la validez de una cláusula de un reglamento de un condominio, aun cuando dicho cuerpo reglamentario conste inscrito en el Registro de la Propiedad y (2) actos realizados por una Junta de Directores de un Condominio, aun cuando estos actos se fundamenten en las disposiciones de un reglamento que esté inscrito en el Registro de la Propiedad. Así también, colegimos que conforme al Art. 38 de la Ley de Condominios de 2003, 31 L.P.R.A. sec. 1293b, la suspensión de los servicios esenciales que se suplen mediante elementos comunes generales únicamente procede contra el titular moroso que adeuda cuotas de mantenimiento, derramas o su parte proporcional del seguro comunal.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo